**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL CASE NO. 3:19-cv-00689-MR**

| | | |
|---|---|---|
| **TREY DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **FNU GOSNELL, et al.,** | ) | **ORDER** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of the Second Amended Complaint [Doc. 18]. Plaintiff is proceeding *in forma pauperis*. [Doc. 12].

## I. BACKGROUND

*Pro se* incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, complaining about incidents that allegedly occurred when he was a pretrial detainee at the Gaston County Jail. The Amended Complaint passed initial review on claims of excessive force against the following Gaston County Sheriff's Department employees: Deputy Byerly, Deputy Gomez, Deputy Gosnell, Deputy Grousch, Deputy Thompson, Captain Maxwell, and Sergeant Morehouse. [Doc. 17]. The Court granted the

Plaintiff 30 days to file a Second Amended Complaint in accordance with the terms of the Court's Order. [Id.].

The Second Amended Complaint is now before the Court for initial review. In addition to the Defendants already mentioned, the Plaintiff names as a Defendant Allen Cloninger, the Gaston County Sheriff. [Doc. 18].

In the Second Amended Complaint, the Plaintiff alleges that he was subjected to several uses of excessive force by Defendants Byerly, Gosnell, Grousch, Gomez, Thompson, Maxwell, and Morehouse on December 18, 2016, and that he was ultimately left in a restraint chair in a Jail hallway.[1] [Id. at 15]. The Plaintiff alleges that he suffered several seizures in the restraint chair, was rendered unresponsive, and that "officers" failed to give him medical attention. [Id.]. The Plaintiff alleges that "officers" arrived hours later to remove his restraints and, when the Plaintiff remained unresponsive, they stated to each other that he was "faking it" and decided to leave him in the restraint chair. [Id. at 16]. Hours later, following a shift change, the Plaintiff remained unresponsive. The Plaintiff eventually was removed from the restraint chair, and officers summoned paramedics, who took the Plaintiff to the hospital where he was diagnosed with a broken nose. [Id.]. The

[1] These excessive force allegations reiterate the allegations contained in the Amended Complaint, which the Court discussed fully in the Order on initial review of that pleading. [See Doc. 17].

Plaintiff alleges that "deputies and medical staff" never intended to provide him with medical attention and that they only did so out of "their concern for negligence liability rather than Plaintiff's well-being." [Id. at 17]. The Plaintiff alleges that the Defendants' conduct in this regard constitutes "gross negligence and denial of adequate medical attention." [Id.].

The Plaintiff alleges that, when he was returned to the Gaston County Jail from the hospital, he was housed in 23-hour solitary confinement with the loss of canteen and phone privileges and frequent stints of 71 hours of solitary confinement. The Plaintiff alleges that he remained confined in these conditions for the next 13 months. [Id.]. The Plaintiff alleges that this disciplinary confinement was imposed "without undergoing any disciplinary process…." [Id. at 18]. The Plaintiff further alleges that "staff" failed to provide any mental health screening or evaluation of the Plaintiff while he was enduring "extensive and excessive" conditions of disciplinary confinement, and that this caused him mental and emotional distress. [Id.].

The Plaintiff alleges that "the use of force is common practice" at the Jail and that Defendant Cloninger and "administrators"[2] who oversee the

[2] The Plaintiff does not name any Jail "administrators" as defendants as required by Rule 10(a). This failure renders Plaintiff's allegations against these administrators nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). The allegations directed at the administrators are therefore dismissed without prejudice.

Gaston County Sheriff's Department regulations and policies have tacitly authorized the use of force and harsh conditions of confinement. [Id.]. The Plaintiff alleges that the Defendants involved in the excessive force incidents on December 18, 2016 do not appear to have been disciplined for their actions, and that they still worked at the Jail and were allowed to have contact with the Plaintiff after the incidents. [Id.].

The Plaintiff alleges that he had major swelling of the face and head, a broken nose, abrasions and contusions, several seizures, a concussion with temporary fits of paralysis, and mental and emotional distress. He seeks compensatory and punitive damages under 42 U.S.C. § 1983 and under North Carolina law. [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Second Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Second Amended Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III. DISCUSSION**

As in his Amended Complaint, the Plaintiff has stated in his Second Amended Complaint plausible excessive force claims against Defendants Byerly, Gomez, Gosnell, Grousch, Maxwell, Morehouse, and Thompson. His present excessive force claims against these Defendants are likewise plausible and therefore pass initial review.

The Plaintiff additionally alleges that he was denied adequate medical care following the alleged excessive force incidents and that he was not subsequently screened or evaluated for mental and emotional distress.

The Fourth Circuit has "traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate

indifference to serious medical needs" brought by a pretrial detainee. Mays v. Sprinkle, __ F.3d __, 2021 WL 1181273, at *2 (4th Cir. March 30, 2021). A pretrial detainee makes out a claim for the denial of adequate medical care "at least where he shows deliberate indifference to serious medical needs under the cases interpreting the Eighth Amendment." Id. (internal quotation omitted) (recognizing that the Supreme Court held in Kingsley v. Hendrickson, 576 U.S. 389 (2015) that an objective reasonableness standard applies to pretrial detainees' excessive force claims because pretrial detainees may not be punished at all, but declining to decide whether Kingsley applies outside the excessive force context). The Eighth Amendment guarantees that prisoners will not be exposed to cruel and unusual conditions of confinement encompasses a right to medical care for serious medical needs, including psychological needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer v. Brennan, 511 U.S. 825 (1994). Mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Here, the Plaintiff's allegations as set forth in the Second Amended Complaint are too vague and conclusory to state a deliberate indifference claim. The Plaintiff fails to identify the individuals against whom he attempts to assert this claim, or explain how they knew, or why they should have known, that he was experiencing serious medical or mental health needs. In addition, Plaintiff fails to allege facts that would demonstrate that the failure to obtain medical attention was a result of deliberate indifference rather than a negligent belief that he was faking. Further, it is irrelevant the individuals who ultimately called for medical attention allegedly did so to avoid liability rather than due to a genuine concern for the Plaintiff's wellbeing. With regard to the Defendants' alleged failure to provide a mental health evaluation, the Plaintiff fails to allege facts demonstrating that he was experiencing a serious

mental health need or that any Defendant knew of that need and deliberately failed to provide such care. Therefore, the Plaintiff's claims of deliberate indifference to serious medical and mental health needs will be dismissed.

The Plaintiff attempts to assert claims of civil conspiracy, the imposition of disciplinary segregation without due process, and harsh conditions of solitary confinement. However, these claims are too vague and conclusory to proceed in that Plaintiff has failed to identify the individual(s) against whom he intended to assert such claims or adequately describe how his constitutional rights were violated. See generally Fed. R. Civ. P. 8(a)(2) (short and plain statement is required); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim.). Therefore, these claims will be dismissed.

The Plaintiff also attempts to state a claim against Sheriff Cloninger for failing to adequately oversee the Jail and for tacitly authorizing the excessive use of force.

A claim under § 1983 can be brought against a state official in three different capacities: in his personal capacity, his official capacity, or in a more

limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," King, 825 F.3d at 223 (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

The Plaintiff has failed to allege that Defendant Cloninger was personally involved in the alleged violations of his rights, and therefore, he has failed to state a claim against Defendant Cloninger in his personal capacity. The Plaintiff's bare allegation that Defendant Cloninger oversees

the operations of the Sheriff's Department and its regulations and policies is too vague and conclusory to state a claim against Defendant Cloninger in his official capacity. However, the Plaintiff has minimally stated a plausible claim against Defendant Cloninger for supervisory liability with regard to the other Defendants' alleged use of excessive force. Therefore, this claim will be permitted to go forward at this early stage in the proceedings.

Finally, the Plaintiff asserts several claims under North Carolina law. Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims . . . derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018); see § 1367(c)(3). A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction. See § 1367(c)(1), (2), and (4).

First, the Plaintiff asserts claims of assault and battery. See generally Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981) (North Carolina assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow). These claims involve the same Defendants and incidents as the excessive force claims that have passed initial review. Therefore, the Court will exercise supplemental jurisdiction over the North Carolina assault and battery claims at this time.

Next, the Plaintiff asserts a claim for the intentional infliction of emotional distress. The elements of such a claim are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981) (citations and quotation marks omitted). The severe emotional distress required for intentional infliction of emotional distress is "any emotional or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Piro v. McKeever, 245 N.C. App. 412, 416, 782 S.E.2d 367, 371 (2016), *aff'd* 369 N.C. 291, 794 S.E.2d 501 (citations omitted). Conduct is "extreme and outrageous" when it

"exceeds all bounds usually tolerated by a decent society." Shreve v. Duke Power Co., 85 N.C. App. 253, 257, 354 S.E.2d 357, 359 (1987) (citation and quotations omitted).

The Plaintiff alleges in a conclusory manner that the Defendants' actions caused him severe emotional distress. However, he has not alleged a severe or disabling emotional or mental condition as required under North Carolina law. The intentional infliction claim will therefore be dismissed.

Finally, the Plaintiff appears to allege that unnamed individuals were negligent in failing to render medical and mental health assistance. The Court already has dismissed the Plaintiff's federal claims for deliberate indifference to serious medical and mental health needs because he failed to identify the individual(s) at fault and allege adequate supporting facts. The only federal claims that are proceeding are ones of excessive force and supervisory liability with regards to that use of excessive force. The Plaintiff's negligence allegations appear to reference incidents and individuals unrelated to his excessive force claims, and thus do not derive from a common nucleus of operative fact. Because the Plaintiff's negligence claims are not part of the same case or controversy as the federal claims that have passed initial review, the Court declines to exercise supplemental jurisdiction

over such negligence claims, and they are dismissed.[3] See Gibbs, 383 U.S. at 725; 28 U.S.C. § 1367(a).

## IV. CONCLUSION

In sum, Plaintiff has stated an excessive force claim against Defendants Byerly, Gosnell, Grousch, Gomez, Thompson, Maxwell, and Morehouse, and a supervisory claim against Defendant Cloninger. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Byerly, Gosnell, Grousch, Gomez, Thompson, Maxwell, and Morehouse. The remaining claims are dismissed.

**IT IS, THEREFORE, ORDERED** that the Plaintiff's claims under 42 U.S.C. § 1983 and North Carolina law with regard to the alleged use of excessive force as asserted against Defendants Byerly, Gosnell, Grousch, Gomez, Thompson, Maxwell, Morehouse, and Cloninger (in his supervisory capacity) have passed initial review.

**IT IS FURTHER ORDERED** that the Plaintiff's remaining claims under § 1983 for deliberate indifference to a medical need and under North

[3] The Court further notes that, to the extent that the Plaintiff intended to assert medical negligence claims under North Carolina, he has failed to allege that he complied with the certification requirement of N.C. R. Civ. P. 9(j).

Carolina law for intentional infliction of emotional distress and negligence are dismissed for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail summons forms to the Plaintiff for the Plaintiff to fill out and return for service of process on **Defendants Byerly, Cloninger, Gosnell, Grousch, Gomez, Thompson, Maxwell,** and **Morehouse.** Once the Court receives the completed summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to the Plaintiff.

**IT IS SO ORDERED**.

Signed: April 15, 2021

Martin Reidinger
Chief United States District Judge